IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA    )
    )
v.    )    Case No. 3:12CR45-HEH
    )
ARASH MOAZZENI,    )
    )
    Defendant.    )

## MEMORANDUM OPINION
### (Determination that Certain Communications are not Protected by Attorney-Client or Work Product Privileges)

In this tax evasion and fraud case, the United States has filed a Motion for

Determination that Certain Communications are not Protected by Attorney-Client or

Work Product Privileges (ECF No. 44). It presents a number of issues about the scope of

the attorney-client privilege and work product doctrine in the context of alleged crimes

committed in the course of a bankruptcy proceeding. The Court conducted an *in camera*

review of 68 documents over which Defendant claimed privilege, and heard argument on

November 20, 2012. For the reasons set forth herein, the Court has granted, in part, and

denied, in part, the United States' Motion. (Order, November 21, 2012, ECF No. 70.)

### I. BACKGROUND

In March 2012, a grand jury returned an eleven-count indictment against Arash

Moazzeni ("Moazzeni") charging him with tax evasion, filing false returns, failing to pay

due taxes, bankruptcy fraud, concealing assets in bankruptcy, concealing and transferring

property in bankruptcy, and bank fraud. According to the indictment, Arash Moazzeni

has evaded payment of taxes since the mid-1990s, often filing delinquent, sometimes

false, tax returns while under-withholding income taxes. Allegedly, he continued this pattern during his Chapter 7 bankruptcy proceedings, which began in 2005. At various times throughout his bankruptcy, Moazzeni retained three different bankruptcy lawyers: Shreen Mahmoud ("Mahmoud"); Harry Jernigan ("Jernigan")[1]; and, Charles Krumbein ("Krumbein"). He also previously met with attorney Mark Leffler ("Leffler"), who declined representation.

Through his first bankruptcy lawyers—Mahmoud and Jernigan—Moazzeni filed bankruptcy schedules that failed to disclose, among other things, a property in Pendleton County, West Virginia; a camping trailer; and a Wachovia checking account. (Govt's Mem. Exs. G, I, J.) Although some of these assets were owned in either Moazzeni's wife's name or his sister's name, the Government has adequately established a *prima facie* case that Moazzeni was using his wife and sister as "straw" owners. (*Id.* Ex. I.)

According to the Government's evidence at this point, Moazzeni would later cover his tracks in 2006 when, at his direction, Krumbein accused Mahmoud of neglect in preparing the bankrtuptcy filings. This insinuates that she—not Moazzeni—knew of these assets but did not identify them in bankruptcy. (*See* Dec. 2006 Hrg. Tr. at 58:12-18.) In his opening statement at the December 11, 2006 bankruptcy hearing, Krumbein asserted that his "clients got incredibly bad legal advice. Awful, awful, awful, awful, awful legal advice." (*Id.* at 11:2-4.) Later, during direct examination of Mahmoud, he asked about her failure to identify the trailer and her understanding of the transfer of the

---

[1] Both Mahmoud and Jernigan are lawyers with The Jernigan Law Firm, P.C. ("The Jernigan Law Firm").

Secretariat Drive residence. (*Id.* at 58:12-18, 62:17-63:1, 71:19-72:2; Govt's Mem. Ex. J.) On cross examination, Mahmoud made it clear that she always advised Moazzeni to be candid about his assets and that she never advised him not to list any asset. (*Id.* at 80:3-9, 81:9.) She further testified that Moazzeni never told her about the Wachovia account that was omitted from the schedules. (*Id.* at 81:7-9.)

Suspecting a fraudulent transfer, creditors filed an adversary proceeding challenging the sale of Moazzeni's personal residence at 7424 Secretariat Drive to Moazzeni's sister in 2004. (Govt's Mem. Ex. E, ECF No. 45-5.) Additionally, they challenged a post-petition lien that his sister had perfected on Moazzeni's wife's Bath County, Virginia real estate and a bank account held in Moazzeni's sister's name, though his sister voluntarily released any interest in these assets. (*Id.*) The Bankruptcy Court held a trial to address the transfer of the Secretariat Drive residence. U.S. Bankrtupcty Judge Douglas O. Tice agreed with the creditors, avoiding the transfer of Moazzeni's home as fraudulent and entering a judgment against Moazzeni's sister in the amount of $45,000. (*Id.*) Ultimately, in 2010, Judge Tice dismissed Moazzeni's bankruptcy without discharge.

During both the bankruptcy proceedings and the grand jury proceedings, Moazzeni denied culpability and blamed all misconduct on his bankruptcy lawyers' mistakes. For example, concerning Mahmoud and Jernigan, Moazzeni claimed that they advised him not to file amended tax returns to correct certain discrepancies with his bankruptcy schedules. These involved questionable "rental losses" from an allegedly sham partnership jointly owned with his wife and his sister. (Tr. of Rule 2004

Examination of Arash Moazzeni ("2004 Exam") at 146:7-17, Govt's Mem. Ex. A, ECF No. 45-1.) Also, in a letter to Judge Tice, Moazzeni placed the blame squarely on Krumbein's alleged incompetence, calling him "a has-been who never acted as an attorney with our interests in heart and who failed to protect our rights."

As a result of this testimony, the Government argues that Moazzeni has broadly waived the attorney-client and work-product privileges with respect to Mahmoud, Jernigan, and Krumbein. The Government also argues that the crime-fraud exception vitiates privilege to all attorneys involved, including Leffler. While Moazzeni agrees that he has waived privilege to a degree with respect to Mahmoud and Jernigan, he challenges the scope of that waiver, arguing that it is narrower than the Government contends. He also maintains that he has not waived any privilege with respect to Krumbein, because he merely criticized Krumbein's work. And with respect to Leffler, Moazzeni disputes any basis to disregard privilege.

The Government's argument is threefold. First, the Government argues that the privilege does not attach in the first instance to mere *information* that Moazzeni provided to the attorneys tasked with preparation of tax returns, bankruptcy petitions, and bankruptcy schedules. As the argument goes, this *information* does not concern legal advice, and because it was used to prepare non-privileged documents, no privilege protects the information.

Second, the Government argues that Moazzeni waived privilege when he blamed his lawyers and asserted good faith reliance on counsel as a defense. Specifically, the Government points to Moazzeni's testimony during the bankruptcy proceedings in which

he indicated that he disclosed certain assets and transactions to his lawyers, but that they advised him not to include those assets in his schedules. The Government also notes that Moazzeni's request for discharge placed all blame on his previous lawyers, while simultaneously persisting in his claim that his sister was the true owner of his assets. In some cases he accused his lawyers of unethical conduct; in other cases he accused them of incompetence. And by allowing one of his later attorneys (Krumbein) to cross examine a prior attorney (Mahmoud) about the representation, he manifested an intention to waive the privilege. Notably, Krumbein advised Moazzeni during the hearing that the attorney-client privilege would not apply to their discussions if Moazzeni was later charged criminally. Moazzeni would later repeat this pattern of blaming counsel when he voluntarily testified before the grand jury.

Finally, the Government argues that the crime-fraud exception vitiates the privilege altogether. Under this doctrine, it must be shown that "the communication furthered, or was intended by the client to further . . . illegality." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 251 (4th Cir. 2005). As the Government submits, Moazzeni's intent to employ his attorneys as a vehicle of his crimes renders the privilege inapplicable.

## II. LEGAL STANDARDS

The attorney-client privilege has been long recognized as "the oldest of the privileges for confidential communications known to the common law . . . [and] its purpose is to encourage full and frank communication between attorneys and their clients [] thereby promot[ing] broader public interests in the observance of law and

administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

"Because the attorney-client privilege exists for the benefit of the client, the client holds

the privilege." *In re Grand Jury Proceedings #5*, 401 F.3d at 250.

> Substantively, a party claiming privilege bears the burden to show:
>
> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501-502 (4th Cir. 2011) (citations

omitted).

## A.    No Privilege Applies to Information Intended for Third Party Disclosure

It is well-established that providing factual matter to an attorney for preparation of

documents intended for third-party transmission does not bring those facts within the

protection of the privilege. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *see*

*also In re Tarkington*, No. 10-12-8-JRL, 2010 Bankr. LEXIS 1208, at *7 (Bankr.

E.D.N.C. April 2, 2010) (citations omitted). Due to the nature of bankruptcy

proceedings, such non-privileged information is frequently passed from client to counsel,

who then uses the information to prepare documents. *See, e.g., White*, 950 F.2d at 430.

Specifically, "[w]hen information is disclosed for the purpose of assembly into a

bankruptcy petition and supporting schedules, there is no intent for the information to be

held in confidence because the information is to be disclosed on documents publicly filed

with the bankruptcy court." *Id.*; *see also In re Tarkington*, 2010 Bankr. LEXIS 1208, at *7 (citations omitted) ("Attorney-client privilege does not extend to information disclosed during the preparation of a bankruptcy petition or schedules.").

## B.    Crime-Fraud Exception

The Fourth Circuit instructs that "[b]oth the attorney-client and work product privileges may be lost . . . when a client gives information to an attorney for the purpose of committing or furthering a crime or fraud." *In re Grand Jury Proceedings #5*, 401 F.3d at 251 (citing *In re Grand Jury Subpoena (Under Seal)*, 884 F.2d 124, 127 (4th Cir. 1989)). It is incumbent upon the Government to make a *prima facie* showing that privileged communications fall within the exception. *Id.* (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999)). To do so, the Government need not prove the existence of a crime beyond a reasonable doubt or even by a preponderance of the evidence—it is sufficient if the *prima facie* showing establishes that:

> (1) The client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Prong one of this test is satisfied by a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.

*In re Grand Jury Proceedings #5*, 401 F.3d at 251 (internal citations omitted).

When applying the crime-fraud exception to the *attorney-client privilege*, the attorney need not be aware that illegal or fraudulent conduct is afoot. *In re Grand Jury Proceedings #5*, 401 F.3d at 251. But when applying the doctrine to *opinion* work

product, "a *prima facie* case of crime or fraud must also be made out against the attorney." *Id.* at 252 (citation omitted). "Thus, while the attorney-client privilege may be vitiated without showing that the attorney knew of the fraud or crime, those seeking to overcome the opinion work product privilege must make a *prima facie* showing that the attorney in question was aware of or a knowing participant in the criminal conduct." *Id.* (citation and internal quotation marks omitted).

## C.   Waiver of the Attorney-Client Privilege and Work Product Doctrine

The Fourth Circuit has explained the general waiver doctrine as follows:

> A client can waive an attorney-client privilege expressly or through his own conduct. Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter to a party not covered by the privilege. However, an attorney may not unilaterally waive the privilege that his client enjoys. The ability to protect work product normally extends to both clients and attorneys, and the attorney or the client, expressly or by conduct, can waive or forfeit it, *but only as to himself.*

*Hanson v. United States Agency for Int'l Dev.*, 372 F.3d 286, 293-94 (4th Cir. 2004) (emphasis in original) (citations and internal quotation marks omitted). Such waiver may occur if the client places the attorney-client relationship in issue, for example, by affirmatively invoking a defense of good faith reliance on advice of counsel. *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (citations omitted); *see also United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Selective disclosure for tactical purposes waives the attorney-client privilege.").

These authorities must be considered in conjunction with the 2008 Amendments to

Fed. R. Evid. 502(a), which limits the scope of waiver.[2] Rule 502(a) establishes three requirements before a document comes within the scope of a waiver: (1) the waiver must be intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and, (3) they ought in fairness to be considered together. In other words, a waiver is limited in scope. The Advisory Committee explained the interplay between Rule 502(a) and existing jurisprudence as follows:

> [W]hile establishing some exceptions to waiver, the rule does not purport to supplant applicable waiver doctrine generally. The rule governs only certain waivers by disclosure. Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product. *See, e.g., Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999) (reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense); *Ryers v. Burleson*, 100 F.R.D. 436 (D.D.C. 1983) (allegations of lawyer malpractice constitute a waiver of confidential communications under the circumstances).

Advisory Committee Notes to Fed. R. Evid. 502 (2007).

"By requiring a fairness analysis, Congress recognized that '[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties in permitting or prohibiting further disclosures.'" *Eden Isle*

---

[2] The Government incorrectly argues that Rule 502(a) may not apply, because the underlying bankruptcy proceedings occurred before enactment of the Amendments. (Govt's Reply at 1.) In passing the new rule, Congress specifically indicated that it "shall apply in all proceedings *commenced* after the date of enactment of this Act and, *insofar as is just and practicable,* in all proceedings pending on such date of enactment." Act Sept. 19, 2008, P.L. 110-322, § 1(c). This matter was filed after adoption of the Amendment and the bankruptcy proceedings remained pending at that time, although the testimony in question occurred before enactment. Under these circumstances, it would be inconsistent with the text of the statute to revert to the old rule simply because the testimony occurred before September 19, 2008.

*Marina, Inc. v. United States*, 89 Fed. Cl. 480, 503 (2009) (quoting *Fort James Corp. v.*

*Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).

## III. DISCUSSION

Each document at issue falls within one of four categories. The first of these

categories includes 41 documents that are not privileged in the first instance.[3] The

second category includes 27 documents that purportedly fall within the crime-fraud

exception to the attorney-client privilege. Of the documents in this second category, the

Government has sufficiently shown that 20 of those documents should be disclosed in

accordance with the exception,[4] but the Court finds that 7 of the documents remain

privileged.[5] As an alternative basis for disclosure of many of the non-privileged

---

[3] Non-privileged communications include the following documents that have been reviewed *in camera*: PRIV000008; PRIV000009; PRIV000010; PRIV000011; PRIV000012; PRIV000013; PRIV000017; PRIV000018; PRIV000019; PRIV000020; PRIV000021; PRIV000022; PRIV000023; PRIV000024; PRIV000025; PRIV000026; PRIV000028; PRIV000030; PRIV000031; PRIV000035; PRIV000036; PRIV000038; PRIV000039; PRIV000040; PRIV000041; PRIV000042; PRIV000045; PRIV000046; PRIV000047; PRIV000048; PRIV000049; PRIV000050; PRIV000052; PRIV000053; PRIV000054; PRIV000055; PRIV000058; PRIV000059; PRIV000060; PRIV000064; and, PRIV000067.

[4] The second category—documents within the crime-fraud exception—includes the following documents that have been reviewed *in camera*: PRIV000001; PRIV000002; PRIV000003; PRIV000004; PRIV000005; PRIV000006; PRIV000007; PRIV000027; PRIV000033; PRIV000034; PRIV000037; PRIV000043; PRIV000044; PRIV000051; PRIV000056; PRIV000057; PRIV000061; PRIV000062; PRIV000063; and, PRIV000068. Additionally, the following non-privileged communications (*see* note 3, *supra*) would have fallen within the crime-fraud exception had they been otherwise privileged: PRIV000008; PRIV000009; PRIV000010; PRIV000012; PRIV000017; PRIV000018; PRIV000019; PRIV000020; PRIV000021; PRIV000022; PRIV000023; PRIV000025; PRIV000030; PRIV000031; PRIV000054; PRIV000055; PRIV000058; PRIV000059; PRIV000060; and, PRIV000067.

[5] Documents that remain protected include the following: PRIV000014; PRIV000015; PRIV000016; PRIV000029; PRIV000032; PRIV000065; and,

documents and almost all of those within the crime-fraud exception, the third category

includes 39 documents within the scope of Moazzeni's waiver of privilege.[6]

## A.    Non-Privileged Communications

Particularly in the bankruptcy context, certain communications between client and

counsel are not privileged. Indeed, Krumbein alluded to this fact when he advised

Moazzeni that "in bankruptcy proceedings . . . there's really basically no attorney-client

privilege." (2004 Exam at 14:6-10.) While Krumbein's point may be an overly broad

generalization, it stems from the requirement that all assets be disclosed in the bankruptcy

schedules, rendering certain information a matter of public record. Thus, when a client

discloses his or her assets to a lawyer for inclusion in the schedules, that disclosure of

information to the attorney is not generally privileged. *See, e.g., White*, 950 F.2d at 430

("When information is disclosed for the purpose of assembly into a bankruptcy petition

and supporting schedules, there is no intent for the information to be held in confidence .

. ."). Several communications between Moazzeni and his lawyers are not privileged for

this reason.[7]

Moazzeni has also claimed privilege over a number of documents that do not

---

PRIV000066.

[6] Documents within the scope of Moazzeni's waiver include all documents listed in note 4, *supra*, except for the document marked PRIV000062. That document is within the crime-fraud exception, but does not come within the scope of waiver, given the limitations established by the amendments to Fed. R. Evid. 502(a).

[7] Communications between Moazzeni and his lawyers for the purpose of preparing or amending bankruptcy schedules include the following: PRIV000018; PRIV000019; PRIV000020; PRIV000021; PRIV000022; PRIV000025; PRIV000026; PRIV000030; PRIV000031; PRIV000042; PRIV000053; PRIV000054; PRIV000059; PRIV000060; and, PRIV000067.

appear to be privileged under any colorable theory. At the outset, the burden is on Moazzeni to demonstrate that any document is privileged. *Solis v. Food Emplrs. Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011) (citing *In re Grand Jury Proceedings*, 33 F.3d 342, 353 (4th Cir. 1994)). To that end, he has provided a privilege log that includes only a general description of each document, but little if any explanation as to why each document is privileged. This places the burden on the Court to surmise the basis for privilege as best as it can glean from its *in camera* review. On their face, a number of these documents appear to contain no privileged material. These include communications between counsel and third parties,[8] emails scheduling appointments or discussing administrative matters,[9] and communications regarding the scope of representation.[10] Without further explanation, evidence, or authority, the Court concludes that none of these documents are privileged.

## B.    Communications within the Crime-Fraud Exception

The United States takes the position that the crime-fraud exception vitiates the attorney-client privilege with respect to all communications between Moazzeni and the attorneys involved. Because he engaged different counsel at different stages of bankruptcy proceedings—each time under a distinct set of circumstances—the analysis necessarily considers each attorney-client relationship separately. There are three such

---

[8] PRIV000011; PRIV000013; and, PRIV000024.
[9] PRIV000008; PRIV000009; PRIV000010; PRIV000035; PRIV000036; PRIV000038; PRIV000039; PRIV000040; PRIV000041; PRIV000045; PRIV000046; PRIV000047; PRIV000048; PRIV000049; PRIV000050; PRIV000052; PRIV000055; PRIV000058; and, PRIV000064;
[10] PRIV000012; PRIV000017; PRIV000023; and, PRIV000028.

relationships to consider: Leffler (with The Boleman Law Firm); Mahmoud and Jernigan (both with The Jernigan Law Firm); and Krumbein.

With respect to each relationship, the Government must make a *prima facie* showing that: (1) Moazzeni was engaged in or planning a criminal or fraudulent scheme when he sought the advice of each lawyer to further his scheme to commit a crime or fraud, and (2) the documents containing the privileged materials bear a close relationship to his scheme. *In re Grand Jury Proceedings #5*, 401 F.3d at 251.

### 1. Leffler and The Boleman Law Firm

In the summer of 2003, Moazzeni met with Leffler to discuss filing for Chapter 7 bankruptcy protection. Leffler declined the representation and advised Moazzeni to seek another lawyer if he wanted to proceed. Considering the context of the communications between Leffler and Moazzeni, the Government has failed to establish a *prima facie* case that any communications with him fall within the crime-fraud exception.

While the Government has made a sufficient showing that Moazzeni's scheme was in place by the time he filed for bankruptcy in 2005, Leffler's consultation with Moazzeni occurred two years earlier. Although the Government alludes to circumstances that might indicate a pre-existing scheme, it requires too much speculation to draw this conclusion. Even assuming that Moazzeni's alleged scheme was in planning stages when he met with Leffler, there is no indication that Leffler's advice—which has been reviewed *in camera*—has any connection to Moazzeni's purported scheme. Because communications between Leffler and Moazzeni do not "bear a close relationship" to the subject crimes, those documents do not fall within the crime-fraud exception. *In re*

*Grand Jury Proceedings #5*, 401 F.3d at 251. Thus, they remain shielded by the attorney-client privilege.[11]

## 2. Mahmoud, Jernigan, and The Jernigan Law Firm

The Government's bankruptcy fraud claims center on Moazzeni's attempt to hide several assets from creditors. Relevant examples here include the Pendleton County, West Virginia real estate; Moazzeni's Wachovia account held in his wife's name; and, a camping trailer. In each instance, The Jernigan Law Firm—primarily Mahmoud— prepared and filed the bankruptcy schedules that omitted these assets. Leading up to Judge Tice's decision setting aside the sale of the Secretariat Drive residence as fraudulent, the inquiry focused on Moazzeni's failure to disclose these assets to his lawyers as they prepared the schedules. Indeed, Mahmoud testified that she never learned about the existence of several of these assets until *after* she filed the original bankruptcy schedules. (Dec. 2006 Hrg. Tr. at 58:12-18, 81:7-9.)

Considering the bankruptcy schedules together with Mahmoud's testimony before the Bankruptcy Court, the Government has sufficiently shown that communications

---

[11] The United States makes a well-reasoned argument that Moazzeni's consultation with The Boleman Law Firm is relevant, because Moazzeni previously testified that he and his wife never thought about filing for bankruptcy until meeting with Mahmoud in 2005. The Boleman Law Firm is exclusively a bankruptcy law firm, so his contact with Leffler in 2003 undercuts this assertion. But the fact that Moazzeni ever met with Leffler—and whether that fact may be admitted at trial—is not the issue here. *Rhone-Poulenc Rorer*, 32 F.3d at 863 ("Advice is not in issue merely because it is relevant . . ."). Rather, the issue here is whether otherwise privileged documents contained in Leffler's file come within the crime-fraud exception (or a privilege waiver, for that matter). Based on this Court's *in camera* review of the communications between Leffler and Moazzeni, the Court concludes as a matter of fact that those documents bear no discernible relation to his purported scheme.

between Moazzeni and the lawyers at The Jernigan Law Firm fall within the crime-fraud exception. The Government is not required to prove Moazzeni's alleged crimes beyond a reasonable doubt, by clear and convincing evidence, or even by a preponderance of the evidence. *In re Grand Jury Proceedings #5*, 401 F.3d at 251. Rather, it is sufficient that the Government makes a *prima facie* showing that a fraudulent scheme was afoot and that the otherwise privileged documents relate to the fraud. *Id.*

Here, the criminal activity is a scheme to defraud creditors by hiding assets; the means of accomplishing this feat were non-disclosure of Moazzeni's interest in the subject assets. By Moazzeni's design, the bankruptcy schedules prepared by Mahmoud omitted these assets, thereby using The Jernigan Law Firm to perpetrate a fraud. Thus, each of the documents related to the preparation, filing, and consequences of those inaccurate schedules falls within the crime-fraud exception.

### 3. Krumbein

By the time that Moazzeni retained Krumbein, his scheme was unraveling and the creditors began the process of bringing the hidden assets before the trustee. At oral argument, the Government proffered—and Moazzeni did not object—that at a hearing in February 2007, Moazzeni testified that Krumbein prepared the original Chapter 13 plan, which Moazzeni then revised. Likewise, Krumbein stated on the record before the Bankrtuptcy Court in 2006 that his office prepared the schedules accompanying that plan. Schedule A of that plan lists no real property, though the United States has offered evidence that Moazzeni then owned property in Pendleton County, West Virginia, albeit in his wife's name. (Govt's Mem. Exs. H, I.) From this evidence, the Court concludes

that Moazzeni employed Krumbein to assist in filing false bankruptcy schedules in his Chapter 13, just as he had used Mahmoud to do so in his Chapter 7.

Moreover, the Government has sufficiently shown that Krumbein was unwittingly used as a sword to cast blame on Mahmoud, thereby perpetrating a further fraud on the Bankruptcy Court. Although the parties agree that Krumbein was unaware of any misconduct, Moazzeni directed Krumbein to accuse Mahmoud of mistakes or misconduct in preparing the schedules. In effect, Moazzeni attempted to hide his first fraud by effecting a new fraud—that several members of the bankruptcy bar were responsible for his apparent scheme. Any communications with Krumbein in furtherance of this effort to blame Mahmoud and Jernigan fall within the crime-fraud exception.

Specifically citing a First Circuit opinion, Moazzeni asks this Court to impose a somewhat higher *prima facie* standard when assessing the crime-fraud exception. In *In re Grand Jury Proceedings*, 417 F.3d 18 (1st Cir. 2005), the First Circuit noted that the "*prima facie*" standard articulated by the Supreme Court in *United States v. Zolin*, 491 U.S. 554 (1989), "has caused some confusion." *In re Grand Jury Proceedings*, 417 F.3d at 22 (internal quotation marks omitted) (citing *Zolin*, 491 U.S. at 563 n.7). The Court then proceeded to articulate the standard as follows:

> As we read the consensus of precedent in the circuits, it is enough to overcome the privilege that there is a *reasonable basis* to believe that the lawyer's services were used by the client to foster a crime or fraud. The circuits—although divided on articulation and on some important practical details—all effectively allow piercing of the privilege on something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud. . . .

Precisely because of the initial barrier of the privilege, it is very hard for an

adversary unaided to show that the privileged communications were themselves corrupt, *so the requirements for access cannot be set too high.* And, if the communications were innocent, the initial look may often not damage the client. In all events, the reasonable cause standard is intended to be reasonably demanding; neither speculation nor evidence that shows only distant likelihood of corruption is enough.

*Id.* at 23 (emphasis added).

The Fourth Circuit has not yet articulated its standard to this degree of detail. In its most recent iteration of the rule, the Court explained that the standard is less than a preponderance or a reasonable doubt, but "must be such as to subject the opposing party to the risk of non-persuasion if the evidence as to the disputed fact is left unrebutted." *In re Grand Jury Proceedings #5*, 401 F.3d at 251 (citation and internal quotation marks omitted).

This Court is bound to follow the guidance of the Fourth Circuit, which has set forth a standard easily satisfied in this case.[12] Moazzeni used the services of Krumbein, as his lawyer, to prepare fraudulent schedules during his Chapter 13.[13] He also used Krumbein to mislead the Bankruptcy Court about how and why his Chapter 7 schedules omitted certain information. Krumbein, ignorant of any scheme to defraud the Court, was used to further this fraud when he conducted a direct examination of Mahmoud, accusing her of gross negligence in representing Moazzeni. (*See, e.g.,* Dec. 2006 Hrg. Tr. at 11:2-4, 58:12-18.) During cross examination, Mahmoud reiterated that she

---

[12] Practically, the First Circuit standard is not necessarily inconsistent with that applied in the Fourth Circuit—the two standards may be nothing more than different ways of articulating the same standard. In this case, the Government has met its burden regardless of which standard is applied.

[13] As a finding of fact, the Court is unconvinced by Moazzeni's explanation that he deleted all contents in Krumbein's original draft of schedules and redrafted them himself.

consistently advised Moazzeni to disclose all assets and interests in property, but that he never told her about some of the assets at issue. (*Id.* at 58:12-18, 81:7-9.) Applying the Fourth Circuit standard, such evidence "subject[s] the opposing party to the risk of non-persuasion," and so it meets the *prima facie* standard.

While the government has made its case for the crime-fraud exception concerning the Krumbein communications, they are not necessarily entitled to every document in his files. As the Court noted in its Order of November 21st (ECF No. 70), some of these documents are Krumbein's notes containing his mental impressions.[14] The Fourth Circuit has instructed that "those seeking to overcome the opinion work product privilege must make a *prima facie* showing that the attorney in question was aware of or a knowing participant in the criminal conduct." *In re Grand Jury Proceedings #5*, 401 F.3d at 252 (citation and internal quotation marks omitted). Here, the Government concedes that there is no evidence of any knowing complicity by any of Moazzeni's lawyers in any scheme to defraud creditors or the Bankruptcy Court. Thus, documents within this subset of Krumbein's file shall remain shielded from disclosure.[15]

## C. Documents within the Scope of Waiver

By placing his attorneys' representation at the center of his defense, Moazzeni has waived any privilege to communications within the scope of that issue. *Rhone-Poulens Rorer*, 32 F.3d at 863. Moreover, his attempt to "[s]elective[ly] disclos[e] for tactical

---

[14] Documents in this category include: PRIV000029; PRIV000032; PRIV000065; and, PRIV000066.

[15] This subset of documents includes: PRIV000029; PRIV000032; PRIV000065; and, PRIV000066.

purposes waives the attorney-client privilege." *Jones*, 696 F.2d at 1072. There can be no serious dispute that Moazzeni has waived the privilege with respect to Mahmoud and Jernigan by calling Mahmoud as a witness and eliciting testimony about her representation of him. And while there are limits to the scope of such waiver, *see* Fed. R. Evid. 502(a)(2), (3), Moazzeni's waiver here is sufficiently broad to encompass the documents at issue. Moazzeni placed his lawyers' competence, responsiveness, and ethics into issue. He cannot now "selective[ly]" decide what aspects of that representation may be disclosed. Thus, as an alternative to the crime-fraud exception explained above, Moazzeni has waived any privilege that otherwise protected the subject communications with Mahmoud and Jernigan.

By contrast, there can be no serious dispute that Moazzeni has not waived any privilege with respect to Leffler—who never even accepted the representation. Moazzeni has never placed any blame on Leffler or otherwise placed his limited engagement in issue. The Government does not argue otherwise, and so the documents from Leffler's firm (The Boleman Law Firm) shall remain privileged.

The more contentious issue concerns any waiver of the attorney-client privilege as between Krumbein and Moazzeni. Relying principally on the text of Fed. R. Evid. 502(a), Moazzeni argues that there was never any intentional disclosure of communications between Moazzeni and Krumbein. But the United States has proffered, without objection, that in 2009, Moazzeni blamed Krumbein for forcing him into a Chapter 13 plan, likening it to "water boarding" during a hearing in the Bankruptcy Court. Consistent therewith, Moazzeni wrote a letter to Judge Tice in June 2009 in which

he accused Krumbein of having "not bothered to read the case or make any preparations for the [December 2006] hearing as such he is [sic] unable to ask pertinent questions useful to our case." (Govt's Mem. Ex. C.) While Moazzeni did not disclose any particular communication with Krumbein, he has several times disclosed such communications generally. When he asserts that Krumbein "forced" him to seek conversion to Chapter 13, he is describing Krumbein's advice.

Contrary to what Moazzeni has argued, there is nothing in Fed. R. Evid. 502 that limits such a waiver resulting from his attempt to blame counsel.[16] *Compare* Fed. R. Evid. 502(a) *with Rhone-Poulenc Rorer*, 32 F.3d at 863. "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner. The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing *or describing* an attorney-client communication." *Rhone-Poulenc Rorer*, 32 F.3d at 863 (emphasis added). Here, during the 2009 hearing, Moazzeni described Krumbein's advice, complaining that Krumbein "forced" him to seek a Chapter 13. While Moazzeni characterizes this as mere "criticism" of Krumbein, that is an overgeneralization. By his description of the events, he has disclosed that Krumbein advised him to seek a Chapter 13 conversion. This is

---

[16] The Advisory Committee Notes accompanying the Rule 502 amendments specifically explain that "the rule does not purport to supplant applicable waiver doctrine generally" and that "[t]he rule governs only certain waivers by disclosure. *Other common-law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information.*" Advisory Committee Notes to Fed. R. Evid. 502 (2007) (emphasis added).

sufficient to waive the privilege as to Krumbein's advice during and leading up to those proceedings.

Moazzeni would again blame his attorneys when he testified before the Grand Jury in 2012. (*See* Grand Jury Tr. at 40:19-22, 41:24-42:4.) As with Mahmoud and Jernigan, Moazzeni cannot repeatedly, selectively place his attorneys' supposed ineptitude in issue while simultaneously preserving the attorney-client privilege. Situations such as this represent a quintessential waiver of the attorney-client privilege.

## IV. CONCLUSION

In sum, and consistent with the Court's Order of November 21, 2012, the United States' Motion for Determination that Certain Communications are not Protected by Attorney-Client or Work Product Privileges has been granted, in part, and denied, in part. The Court has determined that 61 of the 68 purportedly privileged documents must be disclosed. Each of those documents is either not privileged in the first instance, subject to the crime-fraud exception, or within the scope of Moazzeni's waiver. The other 7 documents shall remain shielded from disclosure because each is privileged and no waiver or exception applies.

/s/
_____
Henry E. Hudson
United States District Judge

Dated: Dec 3 2012
Richmond, Virginia